CASE 8—ACTION ON A POLICY OF INSURANCE.—MARCH 13.

113  53
d120 454

# Crutchfield, &c. v. Union Cent. Life Ins. Co.

### APPEAL FROM JESSAMINE CIRCUIT COURT.

JUDGMENT FOR DEFENDANT AND PLAINTIFFS APPEAL.   AFFIRMED.

LIFE INSURANCE—AUTHORITY OF STATE AGENT TO WAIVE FORFEITURE—REINSTATEMENT OF POLICY—REFUSAL OF COMPANY TO ACCEPT HEALTH CERTIFICATE—ELECTION TO TAKE PAID UP TERM POLICY.

Held:   1. The State agent of a life insurance company had no authority to waive a forfeiture where the policy expressly provided that a forfeiture could not be waived "except by an agreement in writing, signed by the president, vice president, or secretary, whose authority for this purpose shall not be delegated;" and, therefore, where such agent agreed with the father-in-law of insured, whose policy had lapsed, to reinstate the policy if he would pay past-due notes and premiums, and insured would furnish a health certificate, and thereupon insured submitted to a medical examination, and the father-in-law gave to the State agent his check for the amount of the notes and premium, but twelve days thereafter the money was returned because the company refused to accept the health certificate, and the insured and his father-in-law acquiesced in that refusal until the death of insured, more than five years thereafter, there was no reinstatement of the policy, the transaction with the State agent being subject to the approval of the company.

2. Where a policy provides that upon a violation of its conditions it shall be void "without action on the part of the company or notification to the insured or beneficiary," no notice of a forfeiture for the non-payment of premium is necessary to make the forfeiture effective.

3 Where a policy provides that if insured after paying three annual premiums, shall fail to pay a premium when due, the company will issue a paid-up life policy upon surrender of the contract, but that if no such surrender be made the policy shall become a paid-up term policy, the insured, by failing to surrender the policy or demand a paid-up policy, elects to take a paid-up term policy, and no cause of action exists on a paid-up policy.

GEORGE DENNY, ATTORNEY FOR APPELLANTS.

This is a suit upon an insurance policy upon the life of Charles M. Boulden for $10,000. The appellants set up three

causes of action, one upon the policy for the sum of $10,000; another for same sum, because under the provisions of the policy if three or more premiums had been paid it because non-forfeitable and its life was extended for a number of years; the third cause of action was for the amount as shown on the face of the policy as a paid up policy to be paid in proportion to the amount of money that had been paid to the company. None of these pleadings were objected to by the appellee, but after the jury was sworn and the case stated, the court of its own motion required appellants, over their objection, to paragraph their petition, which they did, setting up three separate paragraphs. Then upon motion of the insurance company, appellants against their objection were required to elect upon which paragraph they would prosecute their action and under protest they elected to try under the first paragraph, claiming that the policy was in full force and that the only reason that the future premiums had not been paid was through the fault of the company. The insurance company had led the insured to believe by extending his premiums by the execution of notes and the renewal of same when they became due, that it did not intend to insist upon a forfeiture and thus lulled him into the belief that his policy was not cancelled.

Appellants complain first, that the court erred in discharging the jury and requiring them to reform their pleadings, second, the court erred after the pleadings were reformed in requiring them to elect which cause of action they would prosecute. Third, the court erred in failing to submit to the jury the questions involved in the testimony of J. W. Poore, and fourth, the court erred in giving peremptory instructions—thus invading the province of the jury, by determining facts which should have been left to the jury.

### AUTHORITIES CITED.

Ky. Code, sec, 113, subsecs. 2, 3; Merchants F. Ins. Co., 9th Howard, U. S., 309; N. Y. Life Ins. Co. v. Eggleston, 96 U. S., Rep., 572; Phoenix Mutual L. Ins. Co. v. Dester, 106 U. S., 30; Hartford Life Ins. Co. v. Hayden's Admr., 11 R., 993; 71 Wis., 454; N. Y. L. Ins. Co. v. Clepton, 7 Bush, 180; Phoenix Life Ins. Co. ads. Montgomery, 14 Bush, 51; Southern Mutual Life Ins Co. v. Montague, 84 Ky., 653.

ROBERT RAMSEY and JOHN R. ALLEN, FOR APPELLEE.

In March, 1885, defendant issued a ten-annual payment policy on the life of Charles M. Boulden. He paid five premiums in cash—those falling due in 1885, 1886, 1887, 1888 and 1889. He

Crutchfield, &c. v. Union Central Life Insurance Co.

gave notes for the premiums due in 1890 and 1891, neither of which were paid. He defaulted on the next premium due in March, 1892.

The payment of ten annual premiums was the expressed consideration for the policy.

The policy contained the following conditions: "That the premiums shall be paid on or before the days on which they are due. That all notes given for premiums or parts of premiums or interest upon notes given for premiums, shall be paid at maturity. That upon violation of the foregoing conditions, or any of them, the policy shall be null and void without action on the part of the company or notification to the insured or beneficiary. That the contract between the parties is completely set forth in this policy and the application therefor, and none of its terms can be modified, nor any forfeiture under it waived, except by an agreement in writing signed by the president, vice president or secretary, whose authority for this purpose shall not be delegated."

1. We contend that the default in the payment of premiums terminated without action on the part of the company.

2. The superintendent of the company at Louisville had no authority to reinstate the policy, and notice of such want of authority was brought home to the plaintiff by the express terms of the instrument itself, so that no rights can be predicated upon the fact that on December 6 he accepted and retained for a few days a check for the amount of past due premiums and interest.

3. The failure to tender the premiums for each of the years after December 6, terminated the insurance even if it had not theretofore terminated.

4. The failure to return Boulden's notes was not a waiver of forfeiture, since they were not held as a claim against him but as evidence of non-payment.

### AUTHORITIES CITED.

Duvall v. Union Cent. Life Ins. Co., 46 S. W., 518; Hartford Life & Annuity Ins. Co. v. Hayden's Admr., 90 Ky., 39; Germania Ins. Co. v. Rudwig, 80 Ky., 223; N. Y. Life Ins. Co. v. Clopton, 7 Bush, 180; 2 May on Ins., sec. 350; Koehler v. Phoenix Mutual Life Ins. Co., 4 R., 905; Deppen v. Ins. Co., 8 R., 57.

OPINION OF THE COURT BY JUDGE PAYNTER—REVERSING.

In March, 1885, the appellee issued to Charles M. Boulden on his life a 10 annual payment policy for $10,000. The premiums were payable on the 30th of March, 1885, and on

that date each year thereafter. He paid the premiums for 1885, 1886, 1887, 1888 and 1889, and gave his notes for the premiums due in 1890 and 1891. He defaulted on the premium due March 30, 1892. The notes were past due. Thus the matter stood until November 22, 1892, at which time C. C. Early, State agent of appellee, wrote J. W. Poor, father-in-law of insured, that if he would arrange for the payment of the notes past due and the premium due for the year 1892, total $1,406.10, and "Mr. Boulden would furnish a certificate of health," the company would reinstate the policy. Accordingly Poor and Boulden met Early at his office at Louisville on December 5, 1892, when Boulden submitted to a medical examination, and Poor gave his check to Early for the amount of the notes and premium. Poor requested the agent to draw upon him for the premiums to become due on the policy. As an inducement to Poor to agree to pay the sum stated, the policy was assigned to his daughter, Mrs. Boulden, and her children. Poor left the office believing that the matter had been satisfactorily arranged. The appellee was not satisfied with the certificate of health, and refused to accept the money, so on the 17th of December the money was returned to Poor. Boulden never paid the notes or premiums that matured on the policy, nor did Poor do so for him. Neither one of them even offered to do so. Boulden died in June, 1897. In December of that year a payment of the amount of the policy was demanded. The appellants introduced evidence conducing to prove the facts stated above. The court gave peremptory instructions to the jury to find for the appellee. It is claimed that the effect of the transaction was to keep the policy alive. Among others, the policy contained the following provisions and conditions: "If, after three or more years' premiums have been paid, any premium falling due

thereafter be not paid when due, this company will, on surrender of this contract, issue a paid-up life policy (without participating in profits) for the following named amounts. payable at death only: After three annual payments, $1,280; after four annual payments, $1,700; after five annual payments, $2,120; after six annual payments, $2,540; after seven annual payments, $2,960; after eight annual payments, $3,380; after nine annual payments, $3,800,—provided such surrender be made while this policy is in force. Or, if no such surrender be made, it is agreed that this policy shall (after three or more years' premiums have been paid), without surrender, become a paid-up term policy, upon the same terms and conditions as specified herein, except as to the payment of premiums and participation in profits, and continue in force for such time as one annual premium upon this policy is contained in its reserve value according to the American Experience Table of Mortality, with interest at four per cent. per annum, at the end of which time this contract shall be null and void." "Third. That the premiums shall be paid on or before the days on which they become due, at the office of said company, in the city of Cincinnati, or to the authorized agent of the company holding a receipt therefor and producing same, signed by the president, vice-president or secretary, and that all notes given for premiums, or part premiums, or interest upon notes given for premiums, shall be paid at maturity." "Tenth. That upon violation of the foregoing conditions, or any of them, this policy shall be null and void, without action on the part of the company, or notification to the insured or beneficiary," etc. "Eleventh. That the contract between the parties hereto is completely set forth in this policy and the application therefor, and none of its terms can be modified, nor any forfeit-

ure under it waived, except by an agreement in writing signed by the president, vice president or secretary, whose authority for this purpose shall not be delegated." Each premium note contained similar matter, thus: "Said policy, including all conditions therein for surrender or continuance as a paid-up or term policy shall, without notice to any party or parties in interest therein, be null and void on the failure to pay this note at maturity, with interest at six per cent. per annum, payable annually." The theory of the appellants is that the effect of the transaction with Early, on December 5th, was a waiver of the forfeiture; that the return of the money was, in effect, a notification of the appellant; that the other premiums to become due would not be received. Therefore the necessity of tendering them was waived, and the policy was in force at the time the insured died.

This court had under consideration the first clause quoted from the policy in the case of the same parties appellant against the appellee. The opinion was delivered by this court on March 11th, 23 R., 2265 (67 S. W., 8). It was decided in that case that the paid-up term policy was not in force at the time the insured died. The transaction with Poor and Early was not pleaded in that case. So the only questions involved in this case are those stated above, arising out of the transaction of December 5th. Poor does not testify that the report of the medical examination was not to be passed upon by some authority other than Early, nor does he testify that Early claimed to be authorized to pass upon the certificate of health, or that he said it was satisfactory. The letter which Early wrote to Poor shows that the policy was not to be reinstated unless a satisfactory certificate of health was furnished. Poor did not testify that Early agreed to waive a presentation of a satisfactory

certificate of health. On the contrary, the fact that Boulden was compelled to submit to a medical examination shows that the parties understood that a certificate of health was to be furnished. Under the eleventh condition in the policy, it is expressly provided that a forfeiture cannot be waived "except by an agreement in writing, signed by the president, vice president, or secretary, whose authority for this purpose shall not be delegated." The manager of a foreign insurance company in the State is presumed, in absence of evidence to the contrary, to have the authority of an executive officer. If there is a limitation of his authority, notice thereof must be given to the contracting party in a clear and certain manner. In this case it was expressly agreed and understood that the State agent had no such authority, as is evidenced by the provision in the policy which we have quoted. Insurance Co. v. Hayden's Adm'r, 90 Ky., 39 (11 R., 993) (13 S. W., 585), does not enunciate a different doctrine. In that case it was held that a clause in a policy limiting the authority of "agents" did not apply to general agents, but that the insured might rely upon his implied powers, notwithstanding the provision limiting the authority of agents. In this case the policy expressly provided that no one except certain named officers had power to waive a forfeiture. Poor represented the appellants, and was acting for them. The money which he had paid was returned to him. There was an acquiescence in the appellee's interpretation of the policy and the transaction of December 5th for five years. The company had no notice that the appellants were claiming any rights in virtue of the policy. Under the terms of the policy, the company had the right to forfeit it for nonpayment of premiums or notes executed therefor. If stood forfeited for such failure without "notification to the in-

sured or beneficiary." Besides, this court has held in In-
surance Co. v. Duvall (20 R., 441) (46 S. W., 518), in con-
struing the similar provision of a policy, that a notification
of the forfeiture was unnecessary.  On December 5, 1892,
the right to continue the policy in force ceased. We do not
think that Early had authority to waive the forfeiture or
that he represented that the company would accept the
$1,406.10, and waive it, unless a satisfactory certificate of
health was furnished.  It is our opinion that the transac-
tion of Poor was subject to the approval of the appellee.
Having reached this conclusion, it obviates the necessity
of determining as to what would have been the effect of the
failure to draw upon Poor for the premiums which were
thereafter to mature, if the transaction with him had
amounted to reinstatement of the policy.  The cases of In-
surance Co. v. Montague, 84 Ky., 653 (8 R., 579) (2 S. W.,
443,    Am. St. Rep., 218), and Montgomery v. Insurance
Co., 14 Bush, 51, do not, in our opinion, apply to the ques-
tions involved in this case, as the question is not as to the
right of Boulden to have had a paid-up policy after having
paid three or more annual payments.  He had the right
to surrender his policy after paying three or more annual
premiums, and take a paid-up policy.  Failing to surrender
the policy or demand a paid-up policy, the terms of the con-
tract entitled him to a paid-up term policy.  A failure to
surrender the policy and demand a paid-up policy was an
election, under the contract, to take a "paid-up term pol-
icy."

The appellants claim that the court erred in compelling
them to elect which cause of action they would prosecute.
The additional cause or causes of action set out were the
same as those attempted to be pleaded in the appellant's
action against appellee in which the opinion was delivered

on the 11th day of this month. If there were no other reasons to sustain the action, the ones given in that opinion would be sufficient for declining to reverse this case for that ruling. The paid-up term policy did not continue in force for the period covering the death of the insured, and as we have said above, having failed to surrender the policy and demand a paid-up policy, he elected to take a paid-up term policy; hence no cause of action existed on a paid-up policy.

The judgment is affirmed.