Missouri State Life Insurance Company v. Fry.

Opinion delivered October 1, 1917.

Life insurance—lapse of policy.—A policy of life insurance held forfeited for failure to pay premiums, and not to be kept alive by a provision for automatic extension.

Appeal from Clay Circuit Court, Eastern District; *W. J. Driver,* Judge; reversed.

*L. Hunter* and *Pettit & Pettit,* for appellant.

1. The policy lapsed on March 2, 1916. Deceased had borrowed its entire loan value in September, 1915.

2. Premium notes for entire amount could not be accepted.

3. There was no automatically continued term insurance.

4. The policy was not continued in force by its paragraphs styled "Cash Loans" and "Table of Loan Values." The insured was in default. 62 Oh. St. 385. See also, 122 Ark. 223.

5. The case in 125 Ark. 372 is not analogous. The policy was abandoned. 109 Ark. 17; 96 Fed. 796; 4 L. R. A. (N. S.) 870; 178 U. S. 345.

6. The policy was forfeited. 112 Ark. 171; 104 *Id.* 288.

*W. E. Spence,* for appellee.

There was no indebtedness on February 2, 1916. The policy had a cash value of $104. Under the cash value on loan value classes the policy was still in force. See 139 S. W. 151, 2 Bacon on Life & Acc. Ins. 481. There was a reserve sufficient to pay the premium and the judgment is right.

HUMPHREYS, J.—Appellee instituted suit in the Eastern District of Clay County against appellant, seeking to recover $1,000, 20 per cent. penalty and a reasonable attorney's fee on a life insurance policy issued by appellant to her husband, R. M. Fry, on the 12th day of April, 1909, in which she was named as beneficiary. Ap-

pellant denied liability under the terms of the policy. The cause was tried by the court sitting as a jury upon the pleadings and an agreed statement of facts. Appellee recovered judgment for $1,000 and interest, less $104 and interest for money loaned by appellant to her husband on the policy; a statutory penalty of $120 and an attorney's fee of $100 and costs. The cause is here on appeal.

The only question presented by the appeal is whether under the terms of the policy there was an equity or reserve fund due the policy holder, R. M. Fry, on the 2d day of February, 1916, subject to the payment of the premium then due, so as to prevent a forfeiture of the policy. The premium was not paid by Fry either at that time or during the period of grace, and under the forfeiture clause, appellant canceled the policy. R. M. Fry died a short time after the policy was declared forfeited and had never availed himself of the opportunity to reinstate it. The clauses in the policy bearing upon the issue involved are as follows:

"No. 39482. Missouri State Life Insurance Company agrees to pay one thousand dollars immediately upon proof of death of George W. Fry, the insured, to Martha A. Fry, wife of the insured, and beneficiary * * *."

"This insurance is granted in consideration of the application herefor, which is hereby made a part of this contract, and of the payment in advance of thirty-one and 85-100 dollars, being the premium for term insurance for the first policy year ending on the 2d day of February, 1910. After the first policy year, the insurance will be continued as whole life insurance upon the payment, of the annual premium of thirty-one and 85-100 dollars on or before the second day of February in every year during the continuance of this policy."

"Premiums may be paid annually, semi-annually or quarterly, in advance, in acordance with the company's table of rates applicable hereto, and the company will allow a change from one to another of such modes of payment upon the insured's written request therefor on

the company's form; should the insured not survive to complete premium payments for the current policy year, the amount necessary for such completion will be deducted from the amount payable at death."

"All premiums are payable in advance, either at the home office of the company in St. Louis, Missouri, or to an agent of the company, upon delivery of a receipt signed by the president or secretary and countersigned by the authorized agent. If any premium is not paid on the date when due, this policy shall cease and determine, except as hereinafter provided."

"This policy is nonforfeitable from date of issue, as follows:

"If any premium after the first is not paid on the date when due, the insurance will continue in force from such due date for the term of one month, which is the period of grace allowed hereunder, without interest charge, in the payment of any such premium and after the first policy year, if a premium is not paid within the period of grace, insurance will automatically continue as term insurance for the face amount hereof for a further term, the total term of continued insurance, including the period of grace, granted at completion of any policy year being specified in the table below."

"The aforesaid automatic term insurance shall be without participation in profits, cash or loan values or further payment of premiums. The aforesaid paid-up life policy shall be without participation in profits."

## TABLE OF NONFORFEITURE VALUES.

| At completion of policy year the | Term of continued insurance Yrs. | Mos. | Paid-up Life Policy | Cash Value |
|---|---|---|---|---|
| 1st | 0 | 2 | $ * | $ * |
| * | * | * | * | 85. |
| 6th | 7 | 10 | 169. | 104. |
| 7th | 9 | 0 | 201. | |
| * | * | * | * | |

"The foregoing table and provisions pertaining thereto are based upon the assumption that there is no indebtedness to the company on this policy. If there is such indebtedness, the cash value will be diminished thereby, the amount of paid-up life policy reduced in the ratio of the indebtedness to the cash value, and the term of continued insurance changed, without endorsement hereon, to that term for which the cash value less the indebtedness will carry the face amount hereof at net single premium term rates, by the standard herein named, for the attained age of the insured; but the insurance shall, in any event, continue in force for the period of grace herein above provided."

"If any premium is not paid on the date when due, or within the period of grace, and this policy has not been surrendered, the company will reinstate the policy as of said due date at any time thereafter, upon evidence of insurability satisfactory to the company and payment of all arrears of premiums with interest, together with the payment, or reinstatement, of any indebtedness on this policy on said due date, with interest."

"At any time after the first policy year and while this policy is in full force, the insured can borrow from the company on the sole security of this policy, properly assigned to and deposited with the company, any sum within the loan value specified in the table below, from which loan value any indebtedness hereon and any unpaid premiums for the current policy year will first be deducted. The company shall furnish the form for the assignment required hereunder and upon completion of the loan will issue its official certificate of deposit of the policy. Such assignment and deposit of the policy will be waived, if the loan be endorsed hereon by the company and a proper certificate of loan furnished by the insured, form for which the company shall provide. Interest, at a rate not to exceed 6 per cent. per annum, will be collected out of the amount of the loan to the end of the current policy year, and thereafter be payable annually in advance. Failure to repay any such loan, or to pay

interest thereon, shall not avoid this policy, unless the total indebtedness hereon to the company shall equal or exceed the reserve on this policy at the time of such failure, nor until one month after notice shall have been mailed by the company to the last known address of the insured and of the assignee, if any.''

### TABLE OF LOAN VALUES.

| After expiration of policy year the | Loan Value |
| --- | --- |
| 1st | $16 |
| * | *     * |
| 6th | 104 |
| 7th | 122 |
| * | *     * |

''This policy is issued with the express understanding that the insured may, without the consent of the beneficiary, receive every benefit, exercise every right and enjoy every privilege conferred on the insured by this policy.''

The judgment below was rendered upon the theory that on February 2, 1916, there was an $18 loan value on the policy in favor of the policy holder, which should have been applied to the payment of interest on the loan and a quarterly payment on the premium, which would have extended the policy beyond April 17, the date R. M. Fry died. Fry had paid the premium annually in the past. He had never availed himself of the privilege to pay the premiums either quarterly or semi-annually. He had borrowed the entire loan value of his policy on September 24, 1915, which absorbed the entire cash value of the policy until February 2, 1916. On that date, there was no cash value in the policy subject to the payment of all or a part of the premium for the current year. Neither was there any available loan value because the increased value for the current year was contingent upon the payment of the annual dues, original loan and interest for the current year. Fry made an application to borrow enough money

on his policy to pay the entire premium for the current year. He was unwilling to borrow less, and rather than accept less, elected to surrender his policy which lapsed on March 2, 1916. It seems to us there is no warrant in the contract for the claim that the policy automatically continued for at least three months when it is evident that the full cash value of the policy on February 2, 1916, had been absorbed by a loan of an equal amount from the company to Fry. The phrase, *cash value*, and not *loan value*, is used in the contract with reference to *Automatic Continued Term Insurance*. But even if *loan value* had application to automatic continued term insurance in the contract, it must necessarily have reference to the available *loan value*. The increased *loan value* would not have been available until the policy holder, Fry, had paid the premium on February 2, 1916, for the current year. This he never did. The increased loan value, had it been available, was only sufficient in amount to pay the interest on the loan and to pay three months' premium. Fry never made application to borrow this amount, nor had he made application in accordance with the terms of the contract to pay the premium quarterly instead of annually. His failure in these respects clearly prevented his beneficiary from claiming an automatic extension or continuation of the policy beyond the period of grace provided in the contract.

Under our construction of the contract, it was error to render judgment for appellee. The judgment is therefore reversed and the cause dismissed.