## GENERAL AMERICAN LIFE INS. CO. v. BROWN.

No. 26022.   April 7, 1936.

Allen May, J. R. Burcham, and Johnson, McGill & Johnson, for plaintiff in error.

Sigler & Jackson, for defendant in error.

PER CURIAM. Charles J. Brown as purchaser and beneficiary, sued the defendant on a certain policy of life insurance issued by the defendant's predecessor on the life of his son, George R. Brown. The parties will be referred to as follows: George R. Brown, as insured; Charles J. Brown, as beneficiary, and Missouri State Life Insurance Company, as the company.

The material facts are: On March 23 1928, beneficiary purchased a policy of life insurance on the life of insured in the sum of $1,000, payable to beneficiary upon the death of the insured. The policy is what is commonly called a "Child's 20-Payment Life Policy." Premiums were paid, quarterly to December 23, 1930. A quarterly premium due on that date was paid by an automatic premium loan in the sum of $5.71, which included interest on the loan to March 23, 1931. A quarterly premium of $5.62, due March 23, 1931, and 34 cents interest

on the outstanding premium loan were paid by increasing the automatic premium loan, which carried the policy to June 23, 1931. On May 16, 1931, the beneficiary signed a policy loan agreement for $28 to pay premiums and the automatic premium loans. This $28 would maintain the policy in force to March 23, 1932. On March 21, 1931, the cash surrender value of the policy was $16. If the annual premium had been paid on March 23, 1931, by cash, the cash surrender value available as of that date was $28, but this value had been consumed by the loan of $28 made May 16, 1931. On March 23, 1932, the quarterly premium of $5.62, loan interest of $1.68, and outstanding loan of $28 became due, of all of which the beneficiary was notified. None of these items were paid on the due date or within the days of grace provided in the policy. The company urged a reinstatement of the policy and two applications to reinstate were made but not completed, and the policy was never reinstated. The insured died January 12, 1933, and due notice thereof was given the company.

The provisions of the policy pertinent to these facts are as follows:

"Grace. A grace period of thirty-one days will be granted for payment of every premium after the first, during which this policy will continue in force. Death of either the insured or purchaser will not modify the obligation hereunder to pay any premium that shall have become due. If any premium is not actually paid when due this policy shall cease and determine, except as herein expressly provided. * * *

"Non-Forfeiture Options. After two full years' premiums have been duly paid, then upon default in payment of any subsequent premium and at any time within the grace period following, any one of the following options may be exercised,

"1. This policy may be surrendered at the Home Office of the Company for its cash value.

"2. This policy may be surrendered at the Home Office of the Company for a non-profit-sharing paid-up life policy for a reduced amount payable at the same time and on the same conditions as this policy.

"3. Insurance for the amount in force during the year preceding default in premium payments may be continued as non-profit-sharing paid-up term insurance reckoned from the due date of the unpaid premium. If on the last day of grace this policy has not been surrendered in accordance with the provisions of Option 1 or Option 2, then Option 3 shall automatically become effective.

"The values in the accompanying table are the values available for each $1,000 of the maximum face amount of this policy after it has been in force on a premium paying basis for the full number of years stated, provided there is no indebtedness hereon to the Company. * * *

"Modification for Indebtedness. Any indebtedness hereon will be deducted from the cash value otherwise available, and will reduce the amount of paid-up insurance under Option 2 and the period of continued term insurance under Option 3 to such amount and such period respectively as may be provided by the cash value less indebtedness according to the American Experience Table of Mortality and Craig's Extension hereof with three and one-half per cent. interest.

"Basis of Computation. The net value of any nonforfeiture option herein provided if there is no indebtedness, is equal to the life insurance reserve loss, during the first twenty years, a surrender charge of not more than two and one-half per cent. of the face amount of the policy. The cash value is at least equal to the sum otherwise available for the purchase of continued term insurance. The reserve on the life insurance benefit of this policy is computed according to the American Experience Table of Mortality and Craig's Extension thereof with three and one-half per cent. interest and the preliminary term method modified on the Twenty Payment Life basis, subject to such modification the first year's insurance hereunder is term insurance purchased by the whole or part of the first year's premium.

"Table of Nonforfeiture Values

| "After policy has been in force | Cash Value for each $1,000 of maximum face amount | Paid-up Life Insurance for each $1,000 of maximum face amount | Term of Continuance | |
| --- | --- | --- | --- | --- |
| | | | Years | Months |
| * * * | * * * | * * * | * * | * |
| 3 years | $16 | $65 | 2 | 2 |
| * * * | * * * | * * * | * * | * |

"Policy Loans. At any time while this policy is in full force after two full years' premiums have been paid, the Company will loan on the sole security of this policy, duly evidenced by indorsement hereon, and properly assigned, any sum which with (1) existing indebtedness, (2) interest in advance to the next anniversary, and (3) any premiums or installments thereof required to complete payments to the end of the policy year then current, does not exceed the cash value at the end of said year. Interest will thereafter be payable annually in advance and any interest not paid when due will be added to the principal. The rate of interest will be six per cent. per annum.

"Failure to repay any loan hereon, or to pay interest will avoid this policy if the total indebtedness hereon to the Company

equals or exceeds the then cash value, but not otherwise. In such event this policy will become void thirty-one days after the Company shall have mailed notice to that effect to the last address of the Purchaser and of the assignee of record, if any. Any indebtedness hereon will be deducted in any settlement of this policy."

The beneficiary contends that on March 23, 1932, the policy had two years and two months of continued, term or extended insurance, which maintained the policy in full force and effect until the date of the death of the insured.

The Company contends (1) the policy lapsed for nonpayment of premium on March 23 1932, and there being no cash surrender value on that date, same having been used as a policy loan, there could be no continued, term, or extended insurance beyond that date, and (2) that the policy was not in effect more than the days of grace beyond that date for failure to pay the premium loan and interest; due notice of cancellation thereof having been given. The court rendered judgment for the amount of the policy less the amount of the loan.

The sole question to be determined is: Under the admitted facts, was the insurance policy continued or extended beyond March 23, 1932? If not, the judgment is erroneous.

The policy provided that after two full years' premiums had been duly paid, upon default of any premium payment any one of the three following options might be exercised: (1) The policy could be surrendered for its cash value, (2) the policy could be surrendered for a paid-up life policy, or (3) insured could secure, under certain conditions, term, continued or extended insurance. If options 1 or 2 were not exercised by the expiration of the last day of grace, option 3 automatically became effective. Options 1 and 2 were not exercised. The policy sets out the tables of continued, term, or extended insurance which could be secured by the application of the cash value for that purpose; in case there was indebtedness against the policy the same would be deducted from the cash value and continued, term, or extended insurance would become effective in such an amount and for such period as would be provided by the application of the cash value, less indebtedness. Had there been no indebtedness against the policy, under its terms, the continued, term, or extended insurance would have been for two years and two months from March 23, 1932.

The undisputed proof shows that on March 23, 1932, the cash surrender value was $28, and there was an indebtedness against the policy of an equal amount. Under the terms of the policy, the Company had a right to deduct the indebtedness from the cash surrender value. Therefore, there was nothing available to pay for the continued, term, or extended insurance.

The policy specifically provides that nonpayment of any premium should cause the policy to cease and determine, except as otherwise provided. "Except as otherwise provided" refers to the 3 options hereinbefore set out. These options are applicable only after the deductions of indebtedness against the policy. On March 23, 1932, the cash surrender value was equaled by the indebtedness, which left nothing to maintain the policy beyond that date. The provision "except as otherwise provided" did not apply. The policy, therefore, ceased or lapsed for nonpayment of premium. It was not in effect on the date of the death of the insured. The insurer has a right to rely upon and enforce such provisions. In the case of Great Southern Life Insurance Co. v. Brooks, 166 Okla. 123, 26 P. (2d) 430, we said.

"However, it is quite generally held that the provisions of an insurance policy requiring prompt payment of the premiums, and the provisions for lapse or cessation of the policy for nonprompt payment are valid, essential, and enforceable provisions of the contract."

In the case of Missouri State Life Ins. Co. v. Westervelt, 120 Okla. 24, 250 P. 113, in the first and second paragraphs of the syllabus, we said:

"The provision in a life insurance policy for automatic continuance or term insurance means that if the premium is not paid on the due date, or within the days of grace, the cash value of the policy as fixed by the table of values, under said provision, less any indebtedness, is applied to continue the policy in force for a definite length of time, reckoned from the due date of the unpaid premium, to be determined by the amount of said cash value and the time in days or months or years it will carry the policy, according to the premium rate.

"The provision in a life insurance policy for an automatic premium loan, based upon the cash value of the policy, fixed by the table of values in the face of the policy, at the end of the policy year, commencing from the due date of the unpaid premium, less the amount of said unpaid premium and any indebtedness against the policy, is inoperative where said premium and the outstanding indebtedness is equal to or in excess of said cash value."

Recovery was allowed on the policy in that case upon finding that the same had been reinstated. The policy in the case at bar was not reinstated.

In Kansas City Life Insurance Co. v. Harper, 90 Okla. 116, 214 P. 924, a life insurance policy containing provisions somewhat similar to those here involved was under consideration. In the fifth paragraph of the syllabus we said:

"The policy in the instant case was dated June 28, 1912. The undisputed evidence showed that the premium payments were as follows: June 28, 1912, prem. paid in cash, $59.63; June 28, 1913, prem. paid in cash, $59.63; June 28, 1914, prem. paid in cash, $59.63; June 28, 1915, prem. paid by note, $59.63, due in 6 months, or 12-28-1915; 12-28-15 note extended to 6-28-16: June 28, 1916, note due and not paid. That on the latter date the loan value of the policy was $108.57, the indebtedness against the policy on account of unpaid note was $63.21, leaving a balance of loan value on said date of $45.36, which was applied to extend the policy for such part of the year as that amount sustained to the annual premium, towit, nine months and three days, which expired March 31, 1917; the policy was not renewed; the insured died on November 17th thereafter. Held: (a) The foregoing was a proper application of the loan value under the terms of the policy and the statute; (b) the policy lapsed or expired on March 31, 1917, and therefore was not in force at the time of the death of the insured; (c) that the judgment of the trial court awarding the judgment in favor of the plaintiff was erroneous in that it was a misapplication of the law to the facts."

In Inter-Southern Life Insurance Co. v. Morrow (Ky.) 12 S. W. (2d) 692, the pertinent facts were: That on August 15, 1922, a policy of insurance was issued on the life of one Morrow. The first year's premium of $20 - 75 was paid. The premiums falling due on the 15th days of August, 1923, and 1924, were paid. Thus the policy of insurance was carried up to the 15th day of August, 1925, at which time it had been in force for three full years. On the latter date the insured executed his note to the insurer for the premium then due. On August 15, 1926, there was due on this note $22 principal and interest. The note was never paid nor was the premium due on August 15, 1926. The insured died April 30, 1927. The company contended that the policy became null and void on August 15, 1926. In the body of the opinion the court said:

"The policy provides that, upon any default in the payment of the premium, then, in the absence of any action on the part of the insured, 'if there be any indebtedness to the company, provided the policy shall have been in force for 3 full years, such indebtedness shall be deducted from the amount which would otherwise be available as a **cash value** (emphasis ours),' and the balance shall be applied 'to extend the insurance without the right to loans or surrender values for the full amount of the policy less the indebtedness.' The policy also sets out the period of time for which the insurance will be extended on the nonpayment of premiums at the end of the successive years during the term of the policy, and also the loan values of the policy at the end of each of such years. The policy further provides that the cash value at the end of any year is the same as the loan value at the end of the preceding year. Three full annual premiums having been paid on this policy, there was, according to its terms at the end of the third year, that is, on August 25, 1926, an extended insurance privilege of 2 years and 33 days, and a loan value of $22. Instead of taking his extended insurance as thus provided, or paid-up insurance, the insured elected by the execution of his note on that date, to keep the policy alive as such, thereby retaining his rights to participate in accumulations, to receive dividends, to be free from the necessity of a medical examination for purposes of reinstatement, and to enjoy such other rights as the policy provided. Had he elected to take extended insurance, he would have had no rights beyond the period of time covered by the extended insurance provided for but, by executing the note, he preserved to himself the right to keep his policy alive by thereafter paying premiums for its full term.

"On August 15, 1926, the insured neither paying the premium then due nor his note for the premium of the preceding year, and taking no further action in the matter, the policy both by its terms and those of the note lapsed, except in so far as the insured had any rights to extended insurance. To what extent then, did he have any rights to extended insurance? The appellee argues that he had a right to such extended insurance as could be purchased by the loan value of his policy at the end of the fourth year, which the policy states is $34. The appellee, agreeing that said $34 should have been credited by the $22, being the principal and interest of the unpaid note, says that there was yet a balance of $12 which extended the policy beyond the date of the death of the insured. Appellee's error lies in her major premises. By the terms of the policy, the extended insurance is not based on the loan value of the policy, but on its cash value and as heretofore stated, under the policy its cash value at the end of any year is the same as the loan value at the end of the preceding year. Therefore, in order to ascertain the cash value of this policy at the end of the fourth year, we must look to what its loan value was at the end of the third year, and, when we do, we find it to be $22.

"Now, both the policy and the note provide that any indebtedness of the insured to the company must first be deducted from the cash value before the remainder is applied to the purpose of extending the insurance. **There was due from the insured to the company on August 15, 1926, the sum of $22 which just equaled the cash value of the policy as of that time. Hence there was nothing to apply to the purpose of extending the insurance. The policy, therefore, lapsed on August 15, 1926, and was not in effect at the time of the death of the assured.''**

The following cases, construing similar contracts, are to the same effect: Palmer v. Central Life Assurance Society of the United States (Minn.) 258 N. W. 732; McGinnis v. Aetna Life Insurance Co. (Mo. App.) 78 S. W. (2d) 501; Miller v John Hancock Mutual Life Ins. Co., 154 Misc. 316, 277 N. Y. S. 244; Owens v. Reserve Loan Life Insurance Co. (N. C.) 175 S. E. 203; Inter-Southern Life Ins. Co. v. Zerrell, 58 F. (2d) 135; Hawthorne v. Bankers' Life Co., 63 F. (2d) 971; Alexander v. Northwestern Mut. Life Ins. Co. (Mo. App.) 290 S. W. 452; Rains v. National Life & Accident Ins. Co., 62 F. (2d) 341; Great Southern Life Ins. Co. v. Kirkpatrick (Tex. Civ. App.) 48 S. W. (2d) 759; Missouri State Life Ins. Co., v. Fry (Ark.) 197 S. W. 700; Meserole et al. v. Southwestern Life Ins. Co. (Tex. Civ. App.) 203 S. W. 1161; Mills v. National Life Ins. Co. (Tenn.) 189 S. W. 691; Pacific Mutual Life Ins. Co. of Calif. v. Davin, 5 F. (2d) 481; Bach v. Western States Life Ins. Co., 51 F. (2d) 191; and Moss v. Aetna Life Ins. Co., 73 F. (2d) 339. We know of no authorities to the contrary, and one have been cited.

The conduct of the company in urging payment of the premium before the lapsing date, urging a reinstatement after lapse, or recognizing the right of the insured under the nonforfeiture provision of the policy did not constitute a waiver of default in the payment of the premium by the company or an estoppel of the company to lapse the policy. Great Southern Life Ins. Co. v. Brooks 166 Okla. 123, 26 P. (2d) 430; Pilot Life Ins. Co. v. Owen, 31 Fed. (2d) 862.

The beneficiary insists that, although default was made in the payment of interest on the premium loans, the company did not cancel the policy for such default by giving the notice provided for in the policy, and that, therefore, the policy was still in effect at the time of the death of the insured. The beneficiary ignores, and asks us to ignore, other provisions of the policy. We must construe this policy of insurance according to its provisions, if those provisions are valid. No contention is made that any of the provisions relied on by the company are invalid. Furthermore, the various provisions of the policy should be considered and construed together. If the terms are clear, consistent, and unambiguous, no forced or strained construction can be indulged in to permit recovery thereon.

The provision of the policy providing for notice of cancellation for failure to pay interest on the policy loans does not modify or affect the provision for avoidance of the policy for failure to pay the premium. Moss v. Aetna Life Ins. Co., 73 F. (2d) 339. The policy here lapsed for failure to pay the premiums and not for failure to pay the interest on the policy loan. Mayers v. Mass. Mut. Life Ins. Co., 11 Fed. Sup. 80; Mills v. National Life Ins. Co., 136 Tenn. 350, 189 S. W. 691; Neighbors v. Union Central Life Ins. Co. (Tenn. App.) 69 S. W. (2d) 618; Pacific Mutual Life Ins. Co. v. Davin, supra.

Having determined that, under the admitted facts, the policy lapsed at the end of the period of grace for failure to pay the premium due thereon, and was not automatically extended or continued beyond that date, it is unnecessary to determine whether there was an effective cancellation or forfeiture of the policy for failure to pay interest on the premium loan.

The judgment is reversed and remanded, with directions to enter judgment for the company, plaintiff in error.

The Supreme Court acknowledges the aid of Attorneys Kent W. Shartel and Ned Looney in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Shartel and approved by Mr. Looney, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and BAYLESS WELCH, CORN, and GIBSON, JJ., concur.